**MOENCH LAW, LLC**
Matthew C. Moench, Esq.
Attorney Id. No. 031462007
1303 Roger Avenue
Bridgewater, NJ 08807
908-208-1910
973-998-6863 (facsimile)
Attorneys for Plaintiffs,
Zhang Zhou Investment LLC and
Chunqiong Zhou

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZHANG ZHOU INVESTMENT LLC and CHUNQIONG ZHOU, | **Case No.:** |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| UNITRUST SOLUTIONS INC., USI SOLUTIONS, INC., UNITRUST SOLUTIONS, LLC, LAWRENCE WEIL, MARY WEIL, CORPORATE OFFICERS 1-10, ABC COMPANIES, 1-10, and JOHN and JANE DOES 1-10, | |
| Defendants | |

Plaintiffs, ZHANG ZHOU INVESTMENT LLC and CHUNQIONG ZHOU, with an address at 7507 Tamaron Drive, Plainsboro, New Jersey 08536, by their undersigned counsel, by way of Complaint against Defendants UNITRUST SOLUTIONS INC., USI SOLUTIONS, INC., UNITRUST SOLUTIONS, LLC, LAWRENCE WEIL, MARY WEIL, CORPORATE OFFICERS 1-10, ABC COMPANIES 1-10, and JOHN and JANE DOES 1-10, say that:

## NATURE OF ACTION

1. In February and June 2017, Defendants manipulated Plaintiffs to enter into a series of agreements wherein Defendants would sell to Plaintiffs a large portfolio of credit card debt and then attempt to collect that debt on behalf of Plaintiffs for a commission.

2. After showing profits for three months, Defendants fraudulently induced Plaintiffs to make a second investment in a similar set of contracts, wherein once again Plaintiffs intended to purchase credit card debt in exchange for a percentage of the debt collected by Defendants.

3. However, Defendants had no intention of fulfilling either set of contracts and engaged in a scheme for the purpose of inducing Plaintiffs to provide Defendants with large amounts of money that they then diverted to their own uses.

4. Defendants immediately ceased any payments to Plaintiffs as soon as the second investment was made.   Defendants converted Plaintiffs money for use in their own investments in gold or other investments.

5. Plaintiffs bring this action to recover $240,000 that was wrongfully obtained by Defendants as part of a purported investment and series of contracts for which Defendants never intended to fulfill, and for all other damages to which they are entitled to under state and federal law.

6. This action is brought against the individuals and corporate entities that helped to perpetuate this fraudulent scheme in violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), the New Jersey RICO statute, N.J.S.A. 2C:41-1, et seq., the Securities Exchange Act of 1934, as amended, the New Jersey Uniform Securities Law, (N.J.S.A. 49:3-52), and state common law.

## PARTIES, JURISDICTION AND VENUE

7.      Plaintiff, ZHANG ZHOU INVESTMENT LLC, is a limited liability company with its principal place of business at 7507 Tamaron Drive, Plainsboro, New Jersey 08536.

8.      Plaintiff, CHUNQIONG ZHOU, is an individual residing at 7507 Tamaron Drive, Plainsboro, New Jersey 08536.  She is a member of Zhang Zhou Investment LLC.

9.      UNITRUST SOLUTIONS, INC. is a company incorporated in Delaware and authorized to do business in Pennsylvania. It has an operating address of 408 Mill Street, Bristol, Pennsylvania 19007.

10.      USI SOLUTIONS, INC., upon information and belief is a company incorporated in Delaware and authorized to do business in Pennsylvania. It has an operating address of 408 Mill Street, Bristol, Pennsylvania 19007.

11.      UNITRUST SOLUTIONS, LLC, is a company incorporated in Delaware and authorized to do business in Pennsylvania. It has an operating address of 408 Mill Street, Bristol, Pennsylvania 19007.

12.      Defendant, LAWRENCE WEIL, upon information and belief is the President, and/or corporate officer and/or shareholder of the Unitrust Solutions companies (hereinafter collectively referred to as "Unitrust Solutions").  He resides at 8 Violet Lane, Robbinsville, NJ 08691.

13.      Defendant, MARY WEIL, upon information and belief is a corporate officer and/or a shareholder of Unitrust Solutions.  She was formerly the president of Unitrust Solutions and is the wife of Defendant Lawrence Weil.  She resides at 8 Violet Lane, Robbinsville, New Jersey.

14.     Defendants ABC COMPANIES 1-10 are corporate officers of Unitrust Solutions were assisted and facilitated in the improper conduct associated with Plaintiffs' funds and accounts.

15.     Defendants CORPORATIONS 1-10 are other entities who received Plaintiffs' money or assisted Defendants in improperly utilizing Plaintiffs funds, or companies who profited off of the misappropriation of Plaintiffs' money and debt accounts.

16.     Defendants JOHN and JANE DOES 1-10 are individuals who assisted Defendants in their misappropriation and fraudulent conduct, or who received Plaintiffs money improperly from Defendants.

17.     The Court has jurisdiction over this matter because it presents as federal question pursuant to 28 U.S.C § 1331 as to Plaintiffs' claims under the Federal RICO statute, and the Securities Act of 1934.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiffs are domiciled in New Jersey, the individual defendants are domiciled in New Jersey, and the contracts indicate that the law of New Jersey governs.  The contracts consent to jurisdiction in Pennsylvania, however, the contracts do not limit jurisdiction to that state.

## FACTS

20.     Plaintiffs repeat the allegations contained in the above-referenced paragraphs as if fully set forth at length herein.

21.     On February 28, 2017, Zhang Zhou Investment LLC entered into an Account Purchase Agreement with Unitrust Solutions.  Pursuant to that agreement, Zhang Zhou Investment purchased six individual portfolios of mixed credit card debt with a face value of $69,190,000.

22.     On or around March 1, 2017, Zhang Zhou Investment paid $130,000 for those debt portfolios through three checks in amounts of $100,000, $29,000, and $1,000. For up to 1 year, Unitrust Solutions retained the option to buy back the remaining debt by paying principal plus 10% of the full purchase price.

23.     Also on February 28, 2017, Zhang Zhou Investment, entered into an "Agreement for Contingency Collections" with Unitrust Solutions.

24.     Pursuant to the agreement, Zhang Zhou Investment contracted with Unitrust Solutions to collect the debt that was purchased from Unitrust Solutions.  Unitrust Solutions would receive 30% of any debt collected for its fees and the remained of the collected debt would be credited to Zhang Zhou Investment's account.

25.     Unitrust Solutions was to provide Zhang Zhou Investment with a statement on the tenth day of each moth setting forth the amount collected during the preceding month and forward a check to Zhang Zhou Investment for its percentage of the amount collected.

26.     The February 28, 2017 Account Purchase Agreement and the Agreement for Contingency Collections are hereinafter referred together as the "February Agreements."

27.     Under the February Agreements, Unitrust Solutions provided three payments to Zhang Zhou Investment between April 11, 2017 and June 16, 2017 totaling $42,257.99.

5

28.     After speaking to a local detective who made inquiries to Defendant Weil, Defendants issued two more checks in the fall of 2018 related to the first agreement – one in September for $2,299.77 and another in December for $1,755.97.   No checks have been issued since that time nor have any statements been provided.   In total, $46,313.73 has been provided to Defendants.

29.     On June 9, 2017, Zhang Zhou Investment and Unitrust Solutions entered into a second series of agreements similar to the February Agreements.   In the June Account Purchase Agreement, Zhang Zhou Investment purchased debt with a face value of $59,459,459 for the sum of $110,000.   Plaintiffs issued a check for $110,000, which was endorsed by Defendant Weil.

30.     On June 5, 2017, the parties also entered into an Agreement for Contingency Collections.   As with the February Collections Agreement, Unitrust Solutions was required to make efforts to collect debt held by Zhang Zhou Investment.   Unitrust Solutions was to retain 30% of any collected debt and the balance would be remitted monthly.   Unitrust Solutions was required to provide monthly statements and payments.

31.     The June Account Purchase Agreement and the June Agreement for Contingency Collections are hereinafter referred to as the "June Agreements."

32.     Unitrust Solutions has never made any payments, provided any accounting, or executed on the June Agreements, instead, simply stealing Plaintiffs' money.

33.     In the first set of contracts, Plaintiffs provided $130,000 and received $46,313.73 in return.

34.     For the second set of contracts, Plaintiffs provided $110,000 and has received nothing in return.

35.     Defendants' actions were deliberate, fraudulent, and constitute an intentional effort to misappropriate Plaintiffs' money.

36.     Defendants issued just enough payments to Plaintiffs to induce them to make a second set of agreements.  Upon receiving the second payment of $110,000, Defendants ceased all activity under the first set of agreements and stole the money from the second investment.

37.     Sometime following the second investment, Plaintiff Zhou inquired of Defendant Weil as to the status of her investments.  At that time, he informed her that rather than invest the money as indicated in the agreements, he instead bought gold or some other investment, and subsequently lost the money.  It was never used to purchase the debt indicated in the agreements, and the debt was never provided to Plaintiffs.

38.     Defendants never sought, nor did they have, Plaintiffs' permission to use any portion of the $240,000 for anything other than purchasing the debt as set forth in the contracts.  They intentionally misled Plaintiffs for the purpose of scamming Plaintiffs out of a significant sum of money.

39.     Defendants attempted to use the corporate form of Unitrust Solutions to protect their improper conduct.  Defendants cannot hide behind the corporation and are personally liable in addition to Unitrust Solutions.

## FIRST COUNT
## VIOLATION OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)

40.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

41.     The Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, provides a private civil action to recover treble damages for "any person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).

42.     18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

43.     The definitional section of RECO defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years.  18 U.S.C. § 1961(5).

44.     Racketeering activity is defined in 18 U.S.C. § 1961(A)-(B) to include mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

45.     The definitional section of RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.SC. § 1961(3).

46.     Defendant Lawrence Weil, with the aid and assistance of the other Defendants, organized, operated, and masterminded the fraudulent credit card debt investment scheme discussed above.

47.     Defendant Lawrence Weil induced Plaintiffs to make the investments and part with their money by promising to provide debt accounts and take actions to collect debt knowing that he had no intention of doing so.  The other Defendants assisted in perpetuating this scheme by assisting in collecting Plaintiffs' money, initiating initial payments to induce further investment, and ceasing all additional activity after the second investment.  Defendant Mary Weil was an officer of the company and knew of the activities

of Lawrence Weil.  Unitrust Solutions was the vehicle used to process the checks and set up the fraudulent investment.  These activities constitute the "Weil RICO Enterprise."

48.     The acts of any Defendant individually were done with the knowledge, consent, approval, and ratification of the other Defendants and are thereby attributed to the Defendants individually, jointly, and severally.

49.     Defendants are separate, culpable parties who benefitted individually and collectively, either directly or indirectly, from the pattern of racketeering over a period of more than two years.

50.     Defendants conducted and participated, directly and indirectly, in the affairs of the Weil RICO Enterprise through a pattern of racketeering activity, and are thereby considered persons within the meaning of RICO.

51.     Defendants, together with other related corporate entities, constitute an association-in-fact criminal enterprise, within the meaning of 18 U.S.C. § 1961(4), which has engaged in activities that affect interstate commerce.  The Weil RICO Enterprise engaged in racketeering activities across state lines as a regular way of doing business and still exists and poses a substantial ongoing threat of continuing its pattern of racketeering activities into the future.

52.     18 U.S.C. § 1962(c) prohibits conducting the affairs of an enterprise through a pattern of racketeering activity.  The definitional section of RICO provides that mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 are "racketeering activity."

53.     The mail fraud statute, 18 U.S.C. § 1341, prohibits a broad range of activity by anyone who "having desired or intending to devise any scheme or artifice to defraud, or

for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and "for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service."

54.     Defendants, in coordination with and/or on behalf of each other, mailed numerous letters and packages during the course of six months from Pennsylvania to the plaintiffs in New Jersey in furtherance of the Defendants' scheme to defraud Plaintiffs in violation of 18 U.S.C. § 1341.

55.     The wire fraud statute, 18 U.S.C. § 1341, also prohibits a broad range of activity by anyone "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire" in interstate commerce "any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme."

56.     Defendants, in coordination with and/or on behalf of each other, made numerous interstate telephone calls, sent numerous emails, and sent numerous faxes to Plaintiffs over the course of six months, in furtherance of Defendants' scheme to defraud Plaintiffs in violation of 18 U.S.C. § 1343.

57.     Thus, Defendants, through the Weil RICO Enterprise, committed several separate acts of mail and wire fraud in furtherance of their fraudulent scheme in violation of 18 U.S.C. §§ 1341, 1343.

58.    A "pattern of racketeering" is defined as "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Mail fraud and wire fraud, along with securities fraud, are considered "racketeering activity."

59.    Defendants committed multiple acts of fraudulent activity as part of their RICO enterprise by engaging in a series of transactions to induce Plaintiffs to make investments in February 2017 and June 2017, and again in September 2018 and December 2018, including through the use of the postal service, telephone, electronic mail, wire, and other sources of communication.  Each act constitutes a separate instance of interrelated racketeering activity.

60.    Defendants' racketeering activity threatens to continue unabated, driven by the possibility of repeated economic gain, and the ability to invest the racketeering income back into the Weil RICO Enterprise.

61.    As a direct and proximate cause of Defendants' actions in violation of 18 U.S.C. § 1962(c), the Plaintiffs have been and continue to be injured in their business or property within the meaning of 18 U.S.C. § 1964(c) in an amount to be determined upon trial of this action, which exceeds $240,000, and the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendants, individually, jointly, and severally, for compensatory damages to be determined at trial, and the sum duly trebled in accordance with 18 U.S.C. § 1964(c); for costs of suit including reasonable attorneys' fees in accordance with 18 U.S.C. § 1964(c), disgorgement of all funds associated with the investment made by Plaintiffs, pre-judgment and post-judgment interest, imposition of a constructive trust over Defendants' business and personal assets for purposes

of returning Plaintiffs' misappropriated funds, and awarding such other and further relief as this Court shall deem just and equitable.

**SECOND COUNT**
**CONSPIRACY TO VIOLATE FEDERAL RICO ACT, 18 U.S.C. § 1962(d)**

62.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

63.     18 U.S.C. § 1962(d) makes it unlawful to conspire to conduct the affairs of an enterprise through a pattern of racketeering activity.

64.     Defendants conspired and agreed with each other to engage in the conduct, or attempted conduct stated above, and also conspired and agreed to aid each other in the racketeering acts, as stated above.

65.     Defendants conspired, planned, and schemed to use the Weil RICO Enterprise as a racketeering enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

66.     Defendants conspired to violate 18 U.S.C. § 1962(c) by conducting the affairs of the Weil RICO Enterprise through a pattern of racketeering activity by committing multiple acts of mail and wire fraud.

67.     Each of the defendants combined, conspired, and confederated with each other to commit a pattern of racketeering activity, and thereby violated 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c).

68.     The Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, provides a private civil action to recover treble damages for "any person

injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

69.     As a direct and proximate cause of Defendants' actions in violation of 18 U.S.C. § 1962(d), the Plaintiffs have been and continue to be injured in their business or property within the meaning of 18 U.S.C. § 1964(d) in an amount to be determined upon trial of this action, which exceeds $240,000, and the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendants, individually, jointly, and severally, for compensatory damages to be determined at trial, and the sum duly trebled in accordance with 18 U.S.C. § 1964(c); for costs of suit including reasonable attorneys' fees in accordance with 18 U.S.C. § 1964(c), disgorgement of all funds associated with the investment made by Plaintiffs, pre-judgment and post-judgment interest, imposition of a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' misappropriated funds, and awarding such other and further relief as this Court shall deem just and equitable.

### THIRD COUNT
### VIOLATION OF NEW JERSEY CIVIL RICO STATUTE
### N.J.S.A. 2C:41-1 *et seq.*

70.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

71.     For the purposes of the Third Count, Plaintiffs allege that Defendants acted with the knowledge and intent required to violate the statutes identified as racketeering activity below and/or were willfully blind to or deliberately ignorant of the falsity of the information they conveyed to Plaintiffs.

72.    Defendants violated the New Jersey Civil RICO statute by committing or conspiring amongst themselves and others to commit a pattern of racketeering activity in violation of N.J.S.A. §§ 2C:41-2(c) and -2(d).

73.    Defendants, along with certain non-party corporate entities, constitute a criminal enterprise, within the meaning of N.J.S.A. § 2C:41-1(c), which has engaged in racketeering activities over a length of time as a regular way of doing business.   That enterprise, the Weil RICO Enterprise, is described in detail above.

74.    The members of the Weil RICO Enterprise play specific and well-defined rules and share a common purpose of obtaining pecuniary gain, including money, in connection with their fraudulent credit card debt investment schemes and fraudulent programs.

75.    At all relevant times, the Weil RICO Enterprise was and remains engaged in activities affecting trade or commerce, including, but not limited to, activities in connection with the sale and purchase of credit card debt as a private placement security in the State of New Jersey.

76.    Defendants have violated and continue to violate N.J.S.A. § 2C:41-2(c) by managing a racketeering enterprise, the Weil RICO Enterprise, which implemented and continues to implement a plan and pattern of racketeering activities.

77.    Defendants have committed a pattern of racketeering activity through their agreement to participate in and actual participation in the Weil RICO Enterprise, which is an association-in-fact enterprise within the meaning of N.J.S.A. § 2C:41-1(c).

78.    Defendants have conspired, among themselves and with the knowing or unknowing cooperation of others, to violate and continue to violate N.J.S.A. § 2C:41-2(d)

14

by managing a racketeering enterprise, the Weil RICO Enterprise, which implemented and continues to implement a plan and pattern of racketeering activities. In furtherance of that conspiracy, Defendants committed overt acts that include, but are not limited to, the racketeering activity under N.J.S.A. § 2C:41-1(a)(2) as alleged in *supra* paragraphs.

79.     Additionally, Defendants, through the Weil RICO Enterprise, violated several sections of the New Jersey Uniform Securities Act, N.J.S.A. § 49:3-47 *et seq.,* and each violation on its own constitutes racketeering activities pursuant to N.J.S.A. § 2C:41-1(a)(p).

80.     Defendants, through the Weil RICO Enterprise, on two or more occasions, also purposefully committed, attempted to commit, solicited another to commit, conspired to commit, or engaged in acts involving theft by deception in violation of N.J.S.A. § 2C:20-4 by obtaining the property of another by deceitful means and artful practices with the intention of depriving Plaintiffs of their property.

81.     As elaborated upon above, Defendants repeatedly used false and misleading statements to induce Plaintiffs to make investments totaling $240,000. Through this conduct, Defendants created or reinforced Plaintiffs' false impression of existing facts, including facts related to Defendants' intended use of the funds provided to them by Plaintiff, and facts related to Defendants' intention to carry out their obligations pursuant to the agreements they induced Plaintiffs to sign. Through their conduct, Defendants created or reinforced Plaintiffs' false impression of existing facts, which Defendants knew or believed to be false, in violation of N.J.S.A. § 2C:20-4(a).

82.     Defendants' repeated violations of N.J.S.A. § 2C:20-4(a), (b), and (c) constitute racketeering activity pursuant to N.J.S.A. § 2C:41-1(a)(n).

83.     Defendants have committed many criminal acts in furtherance of their investment schemes which qualify as racketeering activity under N.J.S.A. § 2C:41-1.

84.     Defendants violated N.J.S.A. § 2C:41-2(c) by associating with an enterprise and conducting or participating, indirectly or directly, in that enterprise through a pattern of racketeering activity.

85.     Defendants also violated N.J.S.A. § 2C:41-2(d) by conspiring with others, including, but not limited to, other members of the Weil RICO Enterprise, to violate N.J.S.A. § 2C:41-2(c).  In furtherance of that conspiracy, Defendants committed overt acts that include but are not limited to the racketeering activity alleged above.

86.     As a direct and proximate result of these racketeering activities by Defendants, Plaintiffs have suffered injury to their business and property, as well as costs and attorneys' fees relating to this action.  Plaintiffs are entitled to an award of treble damages and reasonable attorneys' fees incurred in pursuing this action pursuant to N.J.S.A. § 2C: 41-4(c).

87.     18 U.S.C. § 1962(d) makes it unlawful to conspire to conduct the affairs of an enterprise through a pattern of racketeering activity.

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendants, individually, jointly, and severally, for compensatory damages to be determined at trial, and the sum duly trebled in accordance with N.J.S.A. § 2C:41-4(c), for costs of suit including reasonable attorneys' fees in accordance with N.J.S.A. § 2C:41-4(c), disgorgement of all funds associated with the investment made by Plaintiffs, pre-judgment and post-judgment interest, imposition of a constructive trust over Defendants' business and personal assets for

purposes of returning Plaintiffs' misappropriated funds, and awarding such other and further relief as this Court shall deem just and equitable.

## FOURTH COUNT
## VIOLATION OF 15 U.S.C. § 78j(b), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5

88.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

89.     The debt purchased by Plaintiffs and sold by Defendants is a security with in the meaning of the Securities Exchange Act of 1934 and SEC Rule 10b-5, codified at 17 C.F.R. 240.

90.     Defendants made fraudulent statements and misrepresentation to Plaintiffs in an attempt to induce investment from them, knowing that the investment would not produce the results promised.

91.     Defendants, directly or indirectly, singularly or in concert with others, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or the mails, knowingly or with reckless disregard for the truth:

    (a) Employed devises, schemes, or artifices to defraud;

    (b) Made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c) Engaged in acts, practices, or courses of business which operate or would operate as a fraud and deceit upon purchasers of securities, including Plaintiffs, or upon other persons, in an effort to enrich themselves through undisclosed manipulative tactics by which they wrongfully caused Plaintiffs to suffer damages of at least $240,000 in violation of section 10(b) of the Exchange Act and Rule 10b-5.

92.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information – namely their intent to use the money for their own purposes and not invest it as promised.

93.     Defendants had actual knowledge of their intent to defraud and of their misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

94.     Defendants' material misrepresentations and/or omissions were done knowingly or reckless and for the purpose and effect of concealing the trust.

95.     As a result of the materially false and misleading information and failure to disclose material facts, the sales process was manipulated.

96.     Plaintiffs relied directly or indirectly on the false and misleading statements made by Defendants and upon the absence of materially adverse information that was known to or reckless disregarded by Defendants and not disclosed by Defendants.

97.     Moreover, Defendants took money intended to be invested in the credit card debt and fraudulently used it towards other investments not for the benefit of the Plaintiffs.

98.     Defendants intended their false promises and misrepresentations to be relied upon by Plaintiffs, including initially making payments so as to induce further investment.

99.     But for Defendants' misrepresentations about the purchase of the debt and their intended collection efforts which would lead towards profit, Plaintiffs would not have invested any money with Defendants.

100.   Plaintiffs have been harmed by Defendants' fraudulent conduct and misrepresentations.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

**FIFTH COUNT**
**VIOLATION OF SECTION 20 OF THE SECURITIES EXCHANGE ACT**

101.   Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

102.   The debt purchased by Plaintiffs and sold by Defendants is a security within the meaning of the Securities Exchange Act of 1934 and SEC Rule 10b-5, codified at 17 C.F.R. 240.

103.   Defendants made fraudulent statements and misrepresentation to Plaintiffs in an attempt to induce investment from them, knowing that the investment would not produce the results promised.

104.   Moreover, Defendants took money intended to be invested in the credit card debt and fraudulently used it towards other investments not for the benefit of the Plaintiffs.

105.   Defendants intended their false promises and misrepresentations to be relied upon by Plaintiffs, including initially making payments so as to induce further investment.

106.    But for Defendants' misrepresentations about the purchase of the debt and their intended collection efforts which would lead towards profit, Plaintiffs would not have invested any money with Defendants.

107.    Plaintiffs have been harmed by Defendants' fraudulent conduct and misrepresentations.

108.    Defendants are secondarily liable for the misrepresentations and fraudulent comments of those persons over whom they control.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## SIXTH COUNT
## RESCISSION UNDER SECTION 12(a)(2) of the 1933 ACT

109.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

110.    The debt purchased by Plaintiffs and sold by Defendants is a security within the meaning of the Securities Exchange Act of 1934 and SEC Rule 10b-5, codified at 17 C.F.R. 240.

111.    Only after Plaintiffs had forwarded a second check in an amount exceeding $100,000 did Defendants disclose that they were not going to invest the money as promised and that they were going to redirect it towards other investments for their own benefit.

20

112.    Defendants failed to disclosure their true intent and made fraudulent and misleading statements to induce the investment by Plaintiffs.

113.    Plaintiffs have been harmed by Defendants' fraudulent conduct and misrepresentations.

114.    By reason of the foregoing, Defendants, directly or indirectly, offered or sold a security by the use of means or instrumentalities of communication in interstate commerce or by the mails, and by oral communication: (a) which included untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

115.    Accordingly, Defendants, together and individually, violated Section 12(a)(2) of the 1933 Act (15 U.S.C. § 771(a)(2)).

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## SEVENTH COUNT
## RESCISSION UNDER SECTION 12(a)(1) of the 1933 ACT

116.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

117.    Defendants offered and sold a security.

118.    This cause of action is asserted against Defendants based upon Sections 5 and 12(a)(1) of the 1933 Act, which provides that all non-exempt securities must be registered with the SEC.

119.    As set forth above, Defendants failed to comply with Regulation D, did not have a registration statement in effect as to its securities, and did not file a registration statement with the SEC.

120.    By reason of the foregoing, Defendants offered and sold a security in violation of Sections 5 and 12(a)(1) of the 1933 Act.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## EIGHTH COUNT
## VIOLATIONS OF NEW JERSEY UNIFORM SECURITIES ACT

121.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

122.    The debt purchased by Plaintiffs and sold by Defendants is a security within the meaning of N.J.S.A. § 49:3-49(m).

123.    Defendants offered and sold a security to Plaintiffs.

124.    The security offered and sold by Defendants was not an unregistered, State-exempt security and is not a federal covered security.

125.    Defendants made fraudulent statements and misrepresentation to Plaintiffs in an attempt to induce investment from them, knowing that the investment would not produce the results promised in violation of N.J.S.A. § 49:3-52.

126.    Moreover, Defendants took money intended to be invested in the credit card debt and fraudulently used it towards other investments not for the benefit of Plaintiffs.

127.    Defendants intended their false promises and misrepresentations to be relied upon by Plaintiffs, including initially making payments so as to induce further investment.

128.    But for Defendants' misrepresentations about the purchase of the debt and their intended collection efforts which would lead towards profit, Plaintiffs would not have invested any money with Defendants.

129.    Plaintiffs have been harmed by Defendants' fraudulent conduct and misrepresentations.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## NINTH COUNT
## FRAUDULENT CONCEALMENT

130.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

131.   Defendants had to a duty to disclose their intentions because the sale of a security is intrinsically fiduciary, and necessarily calls for perfect good faith and full disclosure, without regard to any particular intention of the parties.

132.   Defendants breached their duty by deliberately concealing information, including, but not limited to, their intent to breach the Agreements by failing to utilize the money to purchase the credit-card debt accounts and by failing to take efforts to collect the debt.

133.   Defendants' intent to breach the Agreements was a material and significant fact as Plaintiffs' decision was based upon the representations made by Defendants that it would abide by the terms of the Agreements.

134.   Plaintiffs could not have readily ascertained Defendants' intent to breach the Agreements.

135.   Plaintiffs relied on Defendants' duty to disclose material and crucial information to their detriment.

136.   Plaintiffs were damaged by Defendants' intentional omission of material facts in the amount of $240,000.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## TENTH COUNT
## CONSPIRACY TO VIOLATION SECTIONS 10(b) OF THE 1934 ACT; RULE 10b-5, and N.J.S.A. 49:3-52

137.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

138.    Defendants acted in concert.

139.    Defendants entered into an agreement to inflict a wrong against Plaintiffs by failing to disclose material information in connection with the private placement of securities, including Defendants' intent to breach the terms and conditions of the Agreements.

140.    Defendants' misrepresentations and/or omissions amounted to an overt act that proximately caused Plaintiffs to transfer money to Defendants.

141.    As a result, Plaintiffs were damaged in the amount of $240,000.

142.    Consequently, Defendants are equally and vicariously liable for such damages.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

**ELEVENTH COUNT**
**BREACH OF CONTRACT**
**(February Agreements)**

143.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

144.    Plaintiffs paid $130,000 in the February Account Purchase Agreement to purchase debt with a face value of $69,190,000.  Defendants never provided to Plaintiffs any paperwork or account certificates to enable Plaintiffs to have other collectors execute on the debt.  Defendants remain in possession of the accounts.

145.    Plaintiffs also entered into an Agreement for Contingency Collections wherein Unitrust Solutions was to collect debt and provide payments to Plaintiffs.

146.    Defendants only provided five payments over two years totaling $46,313.73.

147.    Defendants never formally ceased collection efforts under the contract or returned the accounts to the Plaintiffs.  Upon information and belief, Defendants are continuing to collect on those debts without paying Plaintiffs or have improperly sold those accounts to other buyers.

148.    Defendants have failed to operate under the terms of the Collection Agreement.

149.    Defendants Lawrence Weil and Mary Weil were aware of the failure to comply with the February Agreements and directed the company to take actions in violation of the agreement.

150.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts

and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

**TWELFTH COUNT**
**BREACH OF CONTRACT**
**(June Agreements)**

151.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

152.    Plaintiffs paid $110,000 in the June Account Purchase Agreement to purchase debt with a face value of $59,459,459.   Defendants breached the Account Purchase Agreement by failing to purchase the debt as required nor delivering it to Plaintiffs.

153.    Instead that money was diverted to other individuals or investments not authorized under the contract.

154.    Plaintiffs have never received any payment pursuant to the June Account Purchase Agreement or Collections Agreement, and have never been provided with the debt purchased.

155.    Defendants have failed to operate under the terms of the Collection Agreement.

27

156.    Defendants Lawrence Weil and Mary Weil were aware of the failure to comply with the February Agreements and directed the company to take actions in violation of the agreement.

157.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

### THIRTEENTH COUNT
### FRAUD

158.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

159.    Defendants entered into the February Agreements knowing they had no intention of honoring the terms of the agreements and this was solely to fraudulently induce additional investments by Plaintiffs.

160.    Defendants accepted $110,000 from Plaintiffs in June 2017 under the false pretense that Defendants would invest that money in the purchase of debt.

161.   Defendants induced Plaintiffs into making this investment by making only three payments on the February Agreements such that Plaintiffs would believe a second investment was financially sound.

162.   Defendants accepted this money under the intentionally false pretense that it would be invested in debt and instead used the money for alternative investments solely for Defendants' benefit.

163.   Defendants stopped any other payments to Plaintiffs immediately upon receipt of the second investment. They only commenced two additional payments after Plaintiffs began seeking help from authorities. Defendants have not refunded any money to Plaintiffs and continue their fraudulent operations.

164.   Plaintiffs would not have entered into these agreements but for Defendants' fraudulent promise to investment the funds as directed by the agreements.

165.   Plaintiffs have been harmed as a result of Defendants' fraudulent inducement and fraudulent concealment of the intended use of the funds solicited from Plaintiffs.

166.   As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets

for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## FOURTEENTH COUNT
## CONVERSION

167.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

168.    Defendants engaged in unauthorized dominion and control over Plaintiffs' funds and assets despite an obligation to properly invest that money pursuant to the contracts.

169.    Specifically, Defendants continue to maintain control over the debt accounts purchased through the February Agreements.  Those accounts have never been returned to Plaintiffs' control, nor have any revenues generated on behalf of those funds been provided to Plaintiffs.  Instead, Defendants have converted them to their own possession and use improperly.

170.    Defendants also improperly took and control the funds provided to them by Plaintiffs with the expectation of executing the June Agreements.  Instead, Defendants stole that money, converting it to their own use for investments not authorized by Plaintiffs, not made pursuant to the contract, and not in Plaintiffs' interests.  That money has never been returned, nor have the Defendants provided debt accounts to the Plaintiffs as required under the contracts.

171.    Defendants' dominion and control over the property has been to the exclusion of, and in defiance of, Plaintiffs' rights, or has otherwise interfered with Plaintiffs' rights to such property.

30

172.    As a direct and proximate result of this conduct, Plaintiffs have not had the use of the money converted by Defendants.

173.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

174.    By reason of the above, Plaintiffs are entitled to an award of compensatory damages, in an amount to be determined at trial.

175.    Defendants' conscious, willful, wanton, and malicious conduct entitle Plaintiffs to an award of punitive damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## FIFTEENTH COUNT
## PROMISORY ESTOPPEL

176.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set forth at length herein.

177.    Defendants made a clear and definite promise to invest the money provided to them by Plaintiffs pursuant to the contracts and to take steps to recover the debt and make payments to Plaintiffs.

178.    Defendants have failed to provide Plaintiffs with the debt accounts purchased in the February Agreements and have retained the accounts and all payments and debt collected against those accounts.

179.    Defendants took Plaintiffs' money associated with the June Agreements and failed to give Plaintiffs the debt accounts for which the money was purchased.  Instead, Defendants have retained that money and used it for their own purposes.

180.    In reliance upon the promises made by Defendants, Plaintiffs made both expenditures of money with the expectation they would (a) receive debt portfolios in the amounts specified in the contracts and (b) that Defendants would attempt to recover that debt and make payments to Plaintiffs.

181.    Defendants have had the benefit of Plaintiffs' money, but have not paid back any of the funds, provided the debt accounts, or an accounting of money accrued.

182.    Plaintiffs have been damaged as a result of their reliance upon Defendants' promises.

183.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets

for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## SIXTEENTH COUNT
## UNJUST ENRICHMENT

184.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if set out at length herein.

185.    Defendants received the benefit of Plaintiffs' money and have failed to take actions as required under the contracts.

186.    Instead, Defendants have used this money to enrich themselves at Plaintiffs' expense.

187.    Plaintiffs issued those funds with the expectation that Defendants would act according to the contracts and not defraud Plaintiffs out of their money.

188.    As a result of issuing these checks, Plaintiffs have been deprived of the benefit of using those funds for their own benefit and use.

189.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

190.    Allowing Defendants to retain more than $240,000 would be unjust and cannot be permitted.

191.    The checks were issued based upon the contracts and the expectation that those funds would be used to purchase debt accounts for which Defendants would try to collect.

192.    Defendants engaged in conduct as outlined herein, which unjustly enriched Defendants to the detriment of Plaintiffs.

193.    Defendants are liable for damages to Plaintiffs.

194.    As a result of Defendants failing to attempt to collect debt, nor returning the debt accounts to Plaintiffs, Plaintiffs have been deprived of the value of the debt accounts and all revenue reasonably expected to have been recovered had Defendants attempted to collect the debt.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## SEVENTEENTH COUNT
## NEGLIGENCE

195.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

196.    Defendants owed a duty to Plaintiffs to properly handle the money provided to them for purchase of debt accounts and to make good faith efforts to collect those debts as set forth in the contracts.

197.    Defendants were negligent in their attempts to recover the debt purchased in the February Agreements and were negligent in their use of Plaintiffs' funds provided in June 2017.  As a result of this negligence, Defendants have been injured.

198.    Defendants breached their duty to Plaintiffs for the reasons outlined herein.

199.    Defendants' breach of duty proximately caused damages to Plaintiffs.

200.    Defendants' actions constitute negligence, leaving Defendants liable to Plaintiffs for all damages proximately caused by Defendants.

201.    By reason of the above, Plaintiffs are entitled to an award of compensatory damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## EIGHTEENTH COUNT
## GROSS NEGLIGENCE

202.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

203.    Defendants owed a duty to Plaintiffs to properly handle the money provided to them for purchase of debt accounts and to make good faith efforts to collect those debts as set forth in the contracts.

204.    Defendants were grossly negligent in their attempts to recover the debt purchased in the February Agreements and were negligent in their use of Plaintiffs' funds provided in June 2017.  As a result of this negligence, Defendants have been injured.

205.    Defendants' breach of duty proximately caused damages to Plaintiffs.

206. Defendants' actions constitute gross negligence, leaving Defendants liable to Plaintiffs for all damages proximately caused by Defendants.

207. By reason of the above, Plaintiffs are entitled to an award of compensatory damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## NINTEENTH COUNT
## MALICIOUS MISREPRESENTATION CAUSING HARM

208. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

209. Defendants intentionally, knowingly, and willingly engaged in conduct as outlined herein to the detriment of Plaintiffs, to enrich themselves. Defendants misrepresented their intentions to use the money to purchase debt for the benefit of Plaintiffs and instead misappropriated that money for their own use.

210. Defendants issued payments on the February Agreements solely to induce Plaintiffs into making a second investment.

211. Defendants made false representations of material fact outlined herein, knowingly, and/or without belief in its truth, and/or in reckless disregard of the truth to Plaintiffs.

212.   Defendants are liable to Plaintiffs for damages resulting from the material misrepresentations made.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

## TWENTIETH COUNT
## NEGLIGENT MISREPRESENTATION CAUSING HARM

213.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

214.   Defendants intentionally, knowingly, and willingly engaged in conduct as outlined herein to the detriment of Plaintiffs, to enrich themselves.   Defendants misrepresented their intentions to use the money to purchase debt for the benefit of Plaintiffs and instead misappropriated that money for their own use.

215.   Defendants issued payments on the first contracts solely to induce Plaintiffs into making a second investment.

216.   Defendants negligently misrepresented facts, as outlined herein, to Plaintiffs.

217.   Defendants are liable to Plaintiffs for damages resulting from the negligent misrepresentations made.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages,

disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

**TWENTY-FIRST COUNT**
**AIDING AND ABETTING COMMON LAW FRAUD**

218.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

219.   Defendants rendered intentional and substantial assistance to each other in order to advance the fraud on Plaintiffs.

220.   Each of the Defendants knew of the fraud perpetuated by the other Defendants.  Each knew of the representations and omissions made by the others.  Each also knew that the representations and omissions made by each of the other Defendants were false and/or misleading at the time they were made.

221.   Defendants had actual knowledge of, and substantially assisted in, the fraudulent scheme to obtain funds from the Plaintiffs through the fraudulent credit card debt scheme.  Because of intertwined business operations and the fluid transfer of information among Defendants, each knew of the fraud perpetuated on Plaintiffs.

222.   Each Defendant acted in concert to defraud Plaintiffs.

223.   Defendants provided each of the others with substantial assistance in making the fraudulent representations and omissions.

224.   Defendants could not have perpetrated their fraud without the substantial assistance of each other and they all provided financial, strategic, and marketing assistance

for their related investment schemes. Defendants are intertwined and independent and each benefited from the success of their related investment schemes.

225.   As a direct, proximate, and foreseeable result of the Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs seek judgment against all Defendants, individually, jointly and severally, for all damages permitted pursuant to the statutes, compensatory damages, disgorgement of all funds associated with the investment made by Plaintiffs, punitive damages, pre-judgment and post-judgment interest, costs of suit, including, but not limited to, counsel fees, imposing a constructive trust over Defendants' business and personal assets for purposes of returning Plaintiffs' funds, and awarding such other and further relief as this Court shall deem just and equitable.

**MOENCH LAW, LLC**
Attorneys for Plaintiffs,
Zhang Zhou Investment LLC and
Chunqiong Zhou


By:  _s/Matthew C. Moench_____
     Matthew C. Moench, Esq.

Dated: April 10, 2019